# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2366

_____

| | | |
|---|---|---|
| Stanley William Stark; Patricia Garnet Stark, | * * * | |
| Plaintiffs - Appellants, | * * | |
| v. | * * | Appeal from the United States District Court for the Western District of Missouri. |
| Sandberg, Phoenix & von Gontard, P.C.; Scott Greenberg; EMC Mortgage Corporation; SpvG Trustee, | * * * * * | |
| Defendants - Appellees. | * | |

_____

Submitted: January 15, 2004
Filed: August 26, 2004

_____

Before BYE, HEANEY and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

Stanley and Patricia Stark appeal the district court's order vacating in part an arbitration award granting them punitive damages. We reverse.

I

Stanley and Patricia are husband and wife and live near Kansas City, Missouri. In 1999, in hopes of shoring up a failing business, the Starks borrowed $56,900 against their home and secured the loan with a mortgage. Despite the infusion of

funds, the business failed and in April 2000 the Starks petitioned for bankruptcy protection. At about the same time, the Starks' lender sold the note, which was in default, to EMC Mortgage Corporation making EMC a debt collector under the provisions of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692o. In anticipation of foreclosure, the Starks vacated the home and moved into an apartment across the street. The Starks, however, remained in possession of legal title and did not abandon the home. In June 2000, EMC's motion to lift the automatic stay was granted and it proceeded with foreclosure.

The Starks were represented throughout the foreclosure and bankruptcy proceedings by attorney Roy True who notified EMC's attorney, Scott Greenberg of Sandberg, Phoenix & von Gontard, P.C., that his representation of the Starks extended beyond the bankruptcy proceedings. Between October 2000 and March 2001, despite letters from True advising EMC he represented the Starks and not to contact them directly, EMC tried several times to deal directly with the Starks. In April 2001, the Starks filed suit against EMC and its attorneys alleging violations of the FDCPA.

EMC moved to compel arbitration as required by the parties' loan agreement, and the district court ordered the dispute submitted to arbitration. The order compelling arbitration is not at issue in this appeal. During the pendency of the arbitration, EMC's agent, without the Starks' consent, forcibly entered the home and posted a sign in the front window indicating the "Property has been secured and winterized. Not for sale or rent. In case of emergency call 1st American (732) 363-3626." The agent then contacted Mrs. Stark at her apartment, and EMC contacted Mr. Stark at work regarding the matter. Further, on November 5, 2001 and January 27, 2002, EMC wrote to the Starks directly regarding insurance coverage on the home. In total, the Starks testified EMC contacted them by mail, telephone or in person at least ten times after being advised they were represented by counsel.

After these incidents, the Starks moved to amend their complaint to include claims alleging intentional torts against EMC and seeking punitive damages. EMC opposed the motion arguing the arbitration agreement expressly precluded an award of punitive damages. The Starks contended the limitation on punitive damages was unconscionable and unenforceable. After extensive briefing, the arbitrator concluded the limitation was ambiguous and construed the language against EMC. The arbitrator noted the agreement purported to grant him "all powers provided by law" and then purported to deny the power to award "punitive . . . damages . . . as to which borrower and lender expressly waive any right to claim to the fullest extent permitted by law." The arbitrator concluded,

> In at least three places the Stark's [sic] are promised that they can seek all damages allowed by law, and then that promise is taken away. This is the keystone of an ambiguous contract, and the Agreement is to be interpreted in their favor. As a matter of law they are not prohibited from seeking punitive damages from EMC.

Appellee's app. at 22.

The arbitrator found EMC violated the FDCPA and awarded the Starks $1000 each in statutory damages, $1000 each in actual damages, $22,780 in attorneys fees, and $9300 for the cost of the arbitration. The arbitrator found EMC's forcible entry into the premises "reprehensible and outrageous and in total disregard of plaintiff's [sic] legal rights" and awarded $6,000,000 in punitive damages against EMC. Id. app. at 17.[1]

---

[1]The arbitrator indicated the award of punitive damages was calculated as one percent of EMC's shareholder equity. One percent of equity, however, would have resulted in an award of $60,000,000. The arbitrator later clarified this mistake indicating it was his intent to award $6,000,000. Thus, the award was actually calculated as one-tenth of one percent of shareholder equity.

The Starks moved to confirm the award, and EMC moved to vacate the punitive damages award arguing the arbitration agreement expressly prohibited punitive damages. No other aspect of the award was challenged. The district court vacated the award of punitive damages, holding the agreement was unambiguous and not susceptible to the arbitrator's interpretation.

On appeal, the Starks contend the arbitrator acted within his authority in construing the contract and his finding of an ambiguity was not irrational. EMC argues the district court's order vacating the award of punitive damages should be affirmed.

II

When reviewing a district court's order confirming or vacating an arbitral award, the court's findings of fact are reviewed for clear error and questions of law are reviewed de novo. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 947-48 (1995); Titan Wheel Corp. of Iowa v. Local 2048, Int'l Ass'n of Machinists & Aerospace Workers, 253 F.3d 1118, 1119 (8th Cir. 2001).

When reviewing an arbitral award, courts accord "an extraordinary level of deference" to the underlying award itself, Keebler Co. v. Milk Drivers & Dairy Employees Union, Local No. 471, 80 F.3d 284, 287 (8th Cir. 1996), because federal courts are not authorized to reconsider the merits of an arbitral award "even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." Bureau of Engraving, Inc. v. Graphic Communication Int'l Union, Local 1B, 284 F.3d 821, 824 (8th Cir. 2002) (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36 (1987)). Indeed, an award must be confirmed even if a court is convinced the arbitrator committed a serious error, so "long as the arbitrator is even arguably construing or applying the contract and acting within the

-4-

scope of his authority." <u>Bureau of Engraving</u>, 284 F.3d at 824 (quoting <u>Misco</u>, 484 U.S. at 38).

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, established "a liberal federal policy favoring arbitration agreements." <u>Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24 (1983). Thus, the FAA only allows a district court to vacate an arbitration award

> (1) Where the award was procured by corruption, fraud, or undue means.
>
> (2) Where there was evident partiality or corruption in the arbitrators, or either of them.
>
> (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
>
> (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

Similarly, under 9 U.S.C. § 11 a reviewing court may only modify the arbitrator's award

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
>
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11.

A "district court must take the award as it finds it and either vacate the entire award using section 10 or modify the award using section 11." Legion Ins. Co. v. VCW, Inc., 198 F.3d 718, 721 (8th Cir. 1999). The deference owed to arbitration awards, however, "is not the equivalent of a grant of limitless power," Leed Architectural Prods., Inc. v. United Steelworkers of Am., Local 6674, 916 F.2d 63, 65 (2d Cir. 1990), and "courts are neither entitled nor encouraged simply to 'rubber stamp' the interpretations and decisions of arbitrators." Matteson v. Ryder Sys. Inc., 99 F.3d 108, 113 (3d Cir. 1996). Thus, courts may also vacate arbitral awards which are "completely irrational" or "evidence[] a manifest disregard for the law." Hoffman v. Cargill Inc., 236 F.3d 458, 461 (8th Cir. 2001) (internal quotations and citations omitted).

An award is "irrational where it fails to draw its essence from the agreement" or it "manifests disregard for the law where the arbitrators clearly identify the applicable, governing law and then proceed to ignore it." Id. at 461-62. "An arbitrator's award draws its essence from the [parties' agreement] as long as it is derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." Johnson Controls, Inc., Sys. & Servs. Div. v. United Ass'n of Journeymen, 39 F.3d 821, 825 (7th Cir. 1994) (internal quotations omitted).

Faced with these limitations on a court's ability to review arbitration awards, EMC argues the arbitrator's award of punitive damages was properly vacated under § 10 because the arbitrator exceeded his powers by modifying the unambiguous agreement, and properly modified under § 11 because in considering the issue of

punitive damages the arbitrator made a decision on a matter not submitted to him.[2] EMC also argues the arbitrator's finding of an ambiguity was irrational and without foundation in reason or fact because the clear language of the agreement precludes an award of punitive damages. Finally, EMC argues the award of punitive damages was excessive and made in manifest disregard of the law. Because we conclude the arbitration agreement unambiguously *permitted* the award of punitive damages, we hold the award of punitive damages was proper and reverse the district court.

III

The plain language of the arbitration agreement states the "borrower and lender expressly waive any right to claim [punitive damages] *to the fullest extent permitted by law*." Appellee's app. at 19 (emphasis added). Thus, the agreement only effected a *limited* waiver of punitive damages, that is, punitive damages were waived only if the governing law permitted such a waiver. Conversely, if the law did not permit the waiver of punitive damages, the arbitration agreement unambiguously preserved the right to claim them.

Under Missouri law "there is no question that one may never exonerate oneself from future liability for intentional torts or for gross negligence, or for activities involving the public interest." Alack v. Vic Tanny Int'l of Mo., Inc., 923 S.W.2d 330, 337 (Mo. 1996) (citing Liberty Fin. Mgmt. Corp. v. Beneficial Data Processing Corp., 670 S.W.2d 40, 48 (Mo. App. 1984) (in turn citing 6A Corbin on Contracts, § 1472 (1962)). An attempt to procure a waiver of punitive damages is an attempt to exonerate oneself from future liability for intentional torts or gross negligence, because the remedy of punitive damages would otherwise be available for such acts.

---

[2]EMC's § 11 argument is clearly without merit. The issue of punitive damages was submitted to the arbitrator. If the award was improper because it exceeded the scope of the agreement, § 10 is the proper avenue to redress the arbitrator's error.

Thus, Missouri law did not permit EMC to exonerate itself from liability for the intentional torts committed against the Starks by procuring the punitive damages waiver, and the arbitrator did not exceed his authority in awarding punitive damages.

We recognize the FAA allows parties to incorporate terms into arbitration agreements that are contrary to state law. See UHC Mgmt. Co. v. Computer Sciences. Corp., 148 F.3d 992, 997 (8th Cir. 1998) (holding "[p]arties may choose to be governed by whatever rules they wish regarding how an arbitration itself will be conducted.") (citation omitted). Thus, had the parties to this agreement intended its interpretation to be governed solely by the FAA, the punitive damages waiver might have barred any such award. The plain language of the agreement, however, makes it clear Missouri law applies to this issue.

The agreement's arbitration clause provides,

> **Arbitration.** To the extent allowed by *applicable law*, any Claim . . . shall be resolved by binding arbitration in accordance with (1) the Federal Arbitration Act, . . . (2) the Expedited Procedures of the Commercial Arbitration Rules of the American Arbitration Association . . . and (3) this Agreement.

Appellee's app. at 19 (emphasis added).

The agreement then defines applicable law as "the *laws of the state* in which the property which secures the Transaction is located." Id. (emphasis added). In other words, the agreement makes clear the parties intent to apply Missouri state substantive law while operating within the framework of the FAA, American Arbitration Association rules and the agreement. As previously noted, the punitive damages waiver expressly states the parties intended to waive punitive damages only

to the extent permitted by Missouri law. Because Missouri law would not permit a waiver under the facts of this case, we hold the arbitrator's award of punitive damages was proper.

IV

Alternatively, while we believe the plain meaning of the agreement supports the award of punitive damages, we also conclude the arbitrator's finding of an ambiguity was not irrational.

The arbitration clause states any claims will be resolved in accordance with the FAA, which permits a waiver of punitive damages. The choice of laws provision, however, states claims must be resolved in accordance with "applicable [Missouri] law," which does not permit the waiver of punitive damages argued for by EMC in this case. Thus, an arbitrator could reasonably conclude this agreement is ambiguous.

In Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995), the Supreme Court considered the juxtaposition of a choice of laws provision prohibiting punitive damages with an arbitration clause permitting an award of punitive damages. The Court concluded "[a]t most, the choice-of-law clause *introduces an ambiguity into an arbitration agreement* that would otherwise allow punitive damages awards." Id. (Emphasis added). As in Mastrobuono, an arbitrator interpreting this agreement could reasonably conclude the apparent conflict between the arbitration clause and the choice of laws provision introduced an ambiguity into the agreement. Accordingly, the Supreme Court's recognition that an ambiguity is created when an agreement purports to be governed by conflicting state and federal law is instructive, and supports the arbitrator's finding of an ambiguity.

Additionally, we cannot ignore well-settled precedent from this court holding state contract law governs whether an arbitration agreement is ambiguous. See Lyster v. Ryan's Family Steak Houses, Inc., 239 F.3d 943, 946 (8th Cir. 2001). Under Missouri law, "[t]he primary rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention." Speedie Food Mart, Inc. v. Taylor, 809 S.W.2d 126, 129 (Mo. Ct. App. 1991). The test for determining if an ambiguity exists in a written contract is "whether the disputed language, in the context of the entire agreement, is reasonably susceptible of more than one construction giving the words their plain meaning as understood by a reasonable average person." Speedie Food Mart, 809 S.W.2d at 129.

In this case, EMC argues the exclusionary language is clear and unambiguous and shields it from liability for any award of punitive damages. When viewed in the context of Missouri law governing exculpatory clauses, however, this clause could easily be viewed as ambiguous. "A 'latent ambiguity' arises where a writing on its face appears clear and unambiguous, but some collateral matter makes the meaning uncertain." Royal Banks of Missouri v. Fridkin, 819 S.W.2d 359, 362 (Mo. 1991) (en banc) (citation omitted). Here, the ambiguity arises because the clause attempts to effect a prospective waiver of rights which Missouri law holds may not be waived. Under Missouri law "there is no question that one may never exonerate oneself from future liability for intentional torts or for gross negligence, or for activities involving the public interest." Alack, 923 S.W.2d at 337 (citations omitted). Words purporting to waive claims which cannot be waived "demonstrate the ambiguity of the contractual language." Id.

Finally, EMC "cannot overcome the common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it." Mastrobuono, 514 U.S. at 62 (citations omitted). EMC

"cannot now claim the benefit of the doubt. The reason for this rule is to protect the party who did not choose the language from an unintended or unfair result." Id. at 63.

Accordingly, we conclude the arbitrator's finding that the contract was ambiguous was not irrational.

V

EMC next argues the award of punitive damages was properly vacated because it is excessive and exhibits a manifest disregard of the law. We disagree.

"Beyond the grounds for vacation provided in the FAA, an award will only be set aside where it is completely irrational or *evidences a manifest disregard for the law*." Hoffman, 236 F.3d at 461 (internal citations and quotations omitted) (emphasis added). "These extra-statutory standards are extremely narrow: . . . [A]n arbitration decision only manifests disregard for the law where *the arbitrators clearly identify the applicable, governing law and then proceed to ignore it*." Id. at 461-62 (citing Stroh Container Co. v. Delphi Indus., 783 F.2d 743, 749-50 (8th Cir. 1986)) (emphasis added).

"A party seeking vacatur [based on manifest disregard of the law] bears the burden of proving that the arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it." Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 389 (2d Cir. 2003). Because "[a]rbitrators are not required to elaborate their reasoning supporting an award," El Dorado Sch. Dist. #15 v. Continental Cas. Co., 247 F.3d 843, 847 (8th Cir. 2001) (internal quotations omitted), "[i]f they choose not to do so, it is all but

impossible to determine whether they acted with manifest disregard for the law." W. Dawahare v. Spencer, 210 F.3d 666, 669 (6th Cir. 2000) (citing Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros, 70 F.3d 418, 421 (6th Cir. 1995)).

Manifest disregard of the law "is more than a simple error in law or a failure by the arbitrators to understand or apply it; and, it is more than an erroneous interpretation of the law." Duferco Int'l, 333 F.3d at 389 (citations omitted). "Our disagreement with an arbitrator's interpretation of the law or determination of the facts is an insufficient basis for setting aside his award." El Dorado Sch. Dist., 247 F.3d at 847 (citing Hoffman, 236 F.3d at 462).

In support of its claim, EMC argues the arbitrator disregarded the Supreme Court's pronouncements in BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 572-74 (1996) (describing a 500:1 ratio of punitive to compensatory damages as "breathtaking" and suspicious), and State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 426 (2003) (finding a 145:1 ratio of punitive to compensatory damages presumptively excessive). In so arguing, however, EMC has failed to present any evidence that the arbitrator "clearly identif[ied] the applicable, governing law and then proceed[ed] to ignore it." Hoffman, 236 F.3d at 461-62 (citing Stroh Container, 783 F.2d at 749-50). None of the cases relied upon by EMC are cited in the arbitrator's decision,[3] and there is nothing in the record to demonstrate "one of the parties clearly stated the law and the arbitrator[] expressly chose not to follow it." W. Dawahare, 210 F.3d at 670; see also Duferco Int'l, 333 F.3d at 390 ("In determining an arbitrator's awareness of the law, we impute only knowledge of governing law identified by the parties to the arbitration.") (citation omitted).

---

[3]The arbitrator's decision predates State Farm making it impossible for the arbitrator to have identified the decision as controlling.

Indeed, to the extent the arbitrator's decision sets forth the basis for the punitive damages award, it is apparent the arbitrator did not disregard governing law. The arbitrator's award was intended to punish EMC and to deter others from similar conduct. In arriving at the appropriate amount, the arbitrator specifically found the $6,000,000 award (amounting to one-tenth of one percent of shareholder equity) was "not great punishment but it should act as a deterence [sic]." Appellee's app. at 18; see also Barnett v. La Societe Anonyme Turbomeca France, 963 S.W.2d 639, 655 (Mo. App. 1998) (holding under Missouri law the net worth of a defendant is relevant when determining the extent of punitive damages necessary to punish and deter the defendant). Accordingly, we reject EMC's claim of manifest disregard.

"Although this result may seem draconian, the rules of law limiting judicial review and the judicial process in the arbitration context are well established and the parties . . . can be presumed to have been well versed in the consequences of their decision to resolve their disputes in this manner." Stroh Container, 783 F.2d at 751. Moreover, "[a]rbitration is not a perfect system of justice, nor it is [sic] designed to be." Hoffman, 236 F.3d at 462 (citation omitted). Rather, it "is designed primarily to avoid the complex, time-consuming and costly alternative of litigation." Id.

> In the arbitration setting we have almost none of the protections that fundamental fairness and due process require for the imposition of this form of punishment. Discovery is abbreviated if available at all. The rules of evidence are employed, if at all, in a very relaxed manner. The factfinders (here the panel) operate with almost none of the controls and safeguards [present in traditional litigation.]

Lee v. Chica, 983 F.2d 883, 889 (8th Cir. 1993) (Beam, J. concurring in part and dissenting in part).

-13-

Here, EMC chose to resolve this "dispute quickly and efficiently through arbitration." Schoch v. Infousa, Inc., 341 F.3d 785, 791 (8th Cir. 2003), cert. denied, 124 S. Ct. 1414 (2004). Indeed, it was EMC that insisted on removing the matter to arbitration. In so doing, EMC "got exactly what it bargained for." Id. "Having entered such a contract, [EMC] must subsequently abide by the rules to which it agreed." Hoffman, 236 F.3d at 463 (citation omitted).

## VI

We reverse the district court's order vacating the award of punitive damages and remand with instructions to confirm the arbitrator's award in its entirety.

_____