ELECTROLUX HOME PRODUCTS,
INC., Plaintiff,

v.

THE UNITED AUTOMOBILE, AERO-
SPACE AND AGRICULTURAL IM-
PLEMENT WORKERS OF AMER-
ICA, and The United Automobile,
Aerospace and Agricultural Imple-
ment Workers of America, Local No.
442, Defendants.

No. C04–3005–MWB.

United States District Court,
N.D. Iowa,
Central Division.

Nov. 17, 2004.

748

James R. Swanger, Belin Lamson McCormick Zumbach Flynn, Des Moines, IA, Keith L. Pryatel, Thomas Evan Green, Kastner Westman & Wilkins, LLC, Akron, OH, for Plaintiff.

Iris E. Muchmore, Simmons Perrine Albright Ellwood, John T. Breitbach, Petrzelka & Breitbach, Cedar Rapids, IA, for Defendants.

**MEMORANDUM OPINION AND ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. *INTRODUCTION AND BACKGROUND* .....................................749
 A. *Procedural Background* ...............................................749
 B. *Factual Background* .................................................750

II. *LEGAL ANALYSIS* .....................................................753
 A. *Standards For Summary Judgment* .....................................753
 B. *Federal Review Of Arbitration Decisions Generally* ......................754
 C. *Review Of Arbitration Decision At Issue In Pending Litigation* ...........755
 1. *Essence of collective bargaining agreement* ..........................755

 2. *Manifest disregard of the law* ........................................759
 a. *Certification of incapacity* ......................................760
 b. *Second medical opinion* .......................................760
 D. *Attorneys' Fees* ...............................................761

**III. CONCLUSION** ........................................................762

## I. INTRODUCTION AND BACKGROUND

### A. Procedural Background

On January 15, 2003, plaintiff Electrolux Home Products, Inc. ("Electrolux") brought this lawsuit against The United Automobile, Aerospace and Agricultural Implement Workers of America ("The National UAW") and the United Automobile, Aerospace and Agricultural Implement Workers of America, Local No. 442 ("UAW Local No. 442") (collectively "The UAW" unless otherwise indicated). In its complaint, filed January 15, 2004, Electrolux seeks vacation of an industrial arbitration award in which an arbitrator determined that a UAW member was wrongfully terminated from her position at an Electrolux plant and directed Electrolux to reinstate the UAW grievant to her former position and to compensate her with back pay. Specifically, Electrolux contends that the arbitrator's opinion and award does not draw its essence from the collective bargaining agreement between Electrolux and the UAW, and is contradicted by the language of the collective bargaining agreement. Electrolux further contends that the arbitrator engaged in misconduct in rendering his opinion and award. Electrolux also asserts that the arbitrator's opinion and award are without rational support and cannot be rationally derived from the collective bargaining agreement. In addition, Electrolux maintains that the arbitrator's opinion and award are in manifest disregard of the law. Finally, Electrolux asserts that substantial evidence in the record as a whole does not support the

arbitrator's opinion and award. The UAW filed an answer and counterclaim on February 6, 2004. In their counterclaim, the UAW seeks enforcement of the challenged arbitration award, an award of attorneys' fees and costs, and an award to the UAW grievant to make her whole for any losses incurred as a result of Electrolux's failure to comply with the arbitrator's decision.

On June 4, 2004, Electrolux filed a motion for summary judgment. In its motion, Electrolux contends that the challenged industrial arbitration award fails to draw its essence or derive rational support from the collective bargaining agreement. In addition, Electrolux asserts that the industrial arbitration award was issued in manifest disregard of the law. Alternatively, Electrolux asserts that the arbitrator, in rendering his opinion and award, exceeded his powers. Finally, Electrolux contends that substantial evidence in the record as a whole does not support the industrial arbitration award. On June 9, 2004, the UAW filed its motion for summary judgment. In its motion, the UAW seeks summary judgment in its favor on Electrolux's claims and on its counterclaim for enforcement of the industrial arbitration award.

The court turns first to a discussion of the undisputed facts as shown by the record, then to the standards applicable to motions for summary judgment and, then, to the legal analysis of whether either of the parties are entitled to summary judgment on any of the claims at issue in this litigation.

## B. Factual Background

The following facts are undisputed. Plaintiff Electrolux owns and operates a production plant in Webster City, Iowa, which manufacturers clothing washers and dryers. The National UAW and UAW Local No. 422 are the collective bargaining representatives for hourly-compensated production and maintenance workers of the plant. Electrolux, the National UAW and UAW Local No. 442 maintain a collective bargaining agreement defining the wages, hours, and terms and conditions of employment for hourly-compensated production and maintenance employees of the Webster City plant. The collective bargaining agreement states that:

> The Company shall have the right to discharge, suspend, demote, or give verbal or written warning notices to employees governed under this agreement for just cause.

Defendants' App. at 17. The collective bargaining agreement also states in relevant part:

> (a) Attendance related disciplinary actions shall be in line with the provisions of the plaint's Attendance Policy.

Compl. ¶ 8; Answer ¶ 8.

The Attendance Policy incorporated into the Electrolux–UAW collective bargaining agreement has been in effect since November 10, 1995, and allots eight banked attendance points to each worker. Employees who exhaust their allotment of eight banked attendance points are subject to termination of their employment with Electrolux. The Attendance Policy provides that zero points are removed if the leave qualifies as FMLA leave. The Attendance Policy also states in pertinent part:

> Any absences of Sickness and Accident leave which do not qualify for FMLA (Family Medical Leave Act) and are less

than 10 working days = 1 [removed attendance] point.

Compl. ¶ 9; Answer ¶ 9.

The Electrolux–UAW collective bargaining agreement also provides:

> The Company shall establish and publish a Family and Medical Leave of Absence Policy consistent with the provisions of the Family and Medical Leave Act of 1993. The Company may, from time to time, amend its policy, but under no circumstances shall an employee receive less benefits than those provided under the Family and Medical Leave Act of 1993.

Compl. ¶ 10; Answer ¶ 10; Defendants' App. at 18. Consequently, Electrolux published for its workers, and enforced a Family Medical Leave Act Procedures Policy that stated:

> Any leave forms not returned within the required time frame, incomplete or improperly completed leave forms, or leave requests which are denied, could result in the loss of attendance points and employees could be subject to other applicable contractual language regarding unexcused absences from work.
>
> . . . . .
>
> Any eligible employee applying for FMLA leave must obtain a form from Human Resources.
>
> . . . . .
>
> If circumstances occur where the employee cannot reasonably provide the required thirty (30) day notice [for leave], the employee must notify HR as soon as possible. The employee must obtain the required form and return the completed document as soon as reasonably possible.

Compl. ¶ 9; Answer ¶ 9. However, Electrolux has not always compelled employees to submit medical certifications for medically-

induced absences of three or more consecutive days.

On August 2, 2002, Deborah Cook was fired by her employer, Electrolux, after Electrolux concluded that she had exhausted her attendance points. Until her termination from employment, Cook was an hourly-compensated production worker employed at Electrolux's Webster City plant, and a member of UAW Local No. 442 subject to the collective bargaining agreement. On July 31, 2002, Cook left work early with the knowledge of her supervisor. Cook notified her supervisor that she was not feeling well and that her stomach was hurting. Cook's supervisor gave her permission to leave. Cook worked her full shift on August 1, 2002. Prior to July 31, 2002, Cook had accumulated seven absentee infractions. Thus, prior to July 31, 2002, Cook had one remaining attendance point.

Electrolux credited Cook with FMLA leave for three days in July 2001, five days in April 2002, and three days in June 2002. On an Electrolux sickness and accident form dated July 17, 2001, Cook's attending physician indicated that Cook was suffering from "gastroenteritis." Defendants' App. at 27. On the Electrolux sickness and accident form Cook submitted for her absence on April 17, 2002, the attending physician stated that the nature of her illness was "gastritis." Defendants' App. at 29. On the Electrolux sickness and accident form Cook submitted for her absence on June 19, 2002, the attending physician stated that the nature of her illness was "Abd. Pah, Diarrhea." Defendants' App. at 31. Electrolux did not require medical certification for these three periods of absence. Medical records Cook gave to Electrolux prior to July 31, 2002, indicated that Cook suffered from gastroenteritis.

Cook attempted to see her regular physician on July 31, 2002, but was not able to see anyone in that office until August 1, 2002. On August 1, 2002, following her Electrolux work shift, Cook visited the Tri–Mark Family Clinic in Fort Dodge, Iowa, and was examined by Physician's Assistant Dawn Syferd–Peterson. PA Syferd–Peterson was neither "designated" nor "approved" by Electrolux for the purpose of rendering an opinion as to whether Cook's July 31, 2002, absence from work was a qualifying leave under the FMLA. PA Syferd–Peterson diagnosed Cook as having Gastroesophageal Reflux Disease ("GERD") and provided Cook with a prescription for Prevacid. PA Syferd–Peterson, however, refused to certify Cook's condition as either "incapacitating" or one otherwise protected by the FMLA. PA Syferd–Peterson was therefore the initial health care provider solicited by Cook to provide FMLA certification on Cook's July 31, 2002, absence from work. PA Syferd–Peterson, however, refused to do so.

On August 2, 2002, Cook was fired from her employment with Electrolux. At the time, Cook had exhausted her allotment of eight (8) banked attendance points. Before her termination, Cook had not tendered any FMLA certifying documentation to Electrolux regarding her July 31, 2002, absence from work. On August 5, 2002, after having already been terminated from her employment at Electrolux, Cook requested to be medically examined by Nurse Practitioner Rochelle Guess at the SMCH Community Clinic in Gowrie, Iowa. Nurse Guess was neither "designated" nor "approved" by Electrolux for the purpose of medically examining Cook and rendering an opinion as to whether Cook's July 31, 2002, absence was a qualifying leave under the FMLA. Nurse Guess completed a Certification of Health Care Provider form and gave the form to Cook. On the FMLA form the following question is

asked: "Describe the medical facts which support your certification, including a brief statement as to how the medical facts meet the criteria [for a "serious medical condition" under the FMLA] of one of these categories:" Compl. ¶ 13; Answer ¶ 13. Nurse Guess answered this question as follows: "Chronic gastritis including episodes of acute epigastric pain. This condition may cause episodic absence due to the illness." Compl. ¶ 13; Answer ¶ 13. Another question on the FMLA leave form asks: "If medical leave is required for the employee's absence from work because of the employee's own condition (including absences due to pregnancy or a chronic condition), is the employee unable to perform work of any kind?" Compl. ¶ 13; Answer ¶ 13. Nurse Guess provided the following answer to this question: "During times of acute onset of symptoms, employee unable to work." Compl. ¶ 13; Answer ¶ 13. Nurse Guess provided Cook with a prescription for Nexium.

On August 5, 2002, Cook filed a grievance under the Electrolux–UAW collective bargaining agreement, contesting her termination. The Electrolux/UAW collective bargaining agreement states:

> B. It is understood and agreed between the parties that the arbitrator acting under this Article shall not have the power to add to, to disregard, or to modify any of the provisions of this contract, and shall have authority to decide only the issues submitted as regard to wages, hours of work and working conditions.
>
> . . . . .
>
> The parties expressly declare that they have bargained between them on all phases of hours, wages, and working conditions, and that this contract represents their full and complete agreement. Since it is understood that this agreement covers wages, hours, and working conditions of the employees, it is agreed that other subjects shall not be the subject of collective bargaining during the term of this agreement unless with written consent of both parties concerned.

Compl. ¶ 21; Answer ¶ 21; Pl.App. at 28, 36.

Cook's discharge grievance was heard by Arbitrator Neil N. Bernstein at an arbitration hearing held in Webster City on July 24, 2003. Throughout Cook's discharge grievance and arbitration hearing, Cook did not challenge or otherwise contest seven of the absentee points that had been subtracted from her available attendance bank of eight attendance points. Instead, Cook challenged only her eighth and final absentee point which was incurred on July 31, 2002. During the arbitration hearing, P.A. Syferd–Peterson testified that: Cook was not incapacitated from working on July 31, 2002; that Cook did not suffer from a "serious health condition" within the meaning of the FMLA; and that Cook's absence on July 31, 2002 from work did not qualify for FMLA protection or treatment.

Nurse Guess testified that Cook did not tell her that she had been examined by P.A. Syferd–Peterson before she was seen by Nurse Guess. Nurse Guess could not recall Cook telling her that she had first attempted to have her July 31, 2002 absence certified as an FMLA event by P.A. Syferd–Peterson. Nurse Guess testified that the result of Cook's blood test for H. Pylori was negative and Cooks' blood count was normal. Nurse Guess further testified that she did not examine Cook on July 31, 2002, and that the first time she saw Cook was on August 4, 2002. As a result, Nurse Guess could not state under oath that Cook had been incapacitated on July 31, 2002.

On November 23, 2003, Arbitrator Bernstein rendered his written arbitration opinion and award. Arbitrator Bernstein found that P.A. Syferd–Peterson had refused to certify Cook's July 31, 2002, absence as an FMLA qualifying event. Arbitrator Bernstein determined that the only issue for his consideration was whether Cook's July 31, 2002, absence qualified for FMLA treatment. Arbitrator Bernstein concluded that Nurse Guess did not have to certify that Cook was, in fact, "incapacitated" on July 31, 2002, and that Nurse Guess's FMLA certification form, which left blank information concerning Cook's "incapacity" was sufficient under the FMLA. Arbitrator Bernstein found that:

> [T]he papers submitted by the Grievant constituted a proper medical certification under the FMLA. They were prepared by a Nurse Practitioner, who is specifically recognized as a "health care provider" under the regulations of the Department of Labor. The certification explicitly found that the Grievant's medical condition qualified as a "serious health condition." Although she did not specifically state that the Grievant's condition incapacitated her on July 31, the Nurse Practitioner did certify that her absence on July 31 was "related to her GERD." This is close enough.

Compl. ¶ 18; Ex. F at 8; Answer ¶ 18.

In response to an argument of Electrolux, Arbitrator Bernstein determined that an FMLA-requesting employee can solicit a second opinion of a medical care provider:

> The Company's primary argument is that the August 5 certification should be disregarded because it is a "second opinion" resulting from "doctor shopping," which the statute does not allow. However, there is no basis in the statute or regulations for this contention. The statute requires only that the certification must be made by the "health care provider for the employee;" it does not differentiate between the treating physician and any other health care provider. The Nurse Practitioner did examine, diagnose and treat the Grievant on August 5, and that is enough to qualify her. The company did cite to a prior arbitration decision and several court opinions expressing preference for the opinion of the treating physician. However, none of those cases concerned a situation where there were conflicting opinions by different health care providers and therefore they provide no guidance for the resolution of this case.

Compl. ¶ 18; Ex. F. at 9; Answer ¶ 18.

Arbitrator Bernstein ordered Electrolux to reinstate Cook to her prior position of employment and to compensate Cook with back pay for the loss of wages and other benefits. On December 5, 2003, Electrolux reinstated Cook to her prior position with full seniority, bidding rights, vacation and insurance. Electrolux did not provide Cook with back pay for lost wages or other losses as a result of Electrolux's termination of Cook on August 2, 2002.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

■ Rule 56 of the Federal Rules of Civil Procedure provides that either the claimant or the defending party may move for summary judgment in its favor on all or any part of a claim. *See* FED. R. CIV. P. 56(a) & (b). "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

754

A case in which the issues involved are primarily questions of law, which the parties contend is the case here, "is particularly appropriate for summary judgment." *TeamBank, N.A. v. McClure,* 279 F.3d 614, 617 (8th Cir.2002) (citing *Adams v. Boy Scouts of America–Chickasaw Council,* 271 F.3d 769, 775 (8th Cir.2001)); *Bank of Am. Nat'l Trust & Sav. Ass'n v. Shirley,* 96 F.3d 1108, 1111 (8th Cir.1996) ("Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."); *Aucutt v. Six Flags Over Mid–America, Inc.,* 85 F.3d 1311, 1315 (8th Cir.1996) (same). With these standards in mind, the court turns to consideration of the parties' cross-motions for summary judgment.

### B. Federal Review Of Arbitration Decisions Generally

A district court's review of an arbitration award is extremely limited. *See Major League Baseball Players Ass'n v. Garvey,* 532 U.S. 504, 512, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001); *Kiernan v. Piper Jaffray Companies, Inc.,* 137 F.3d 588, 591 (8th Cir.1998). The underlying award is entitled to an "extraordinary level of deference." *Schoch v. InfoUSA, Inc.,* 341 F.3d 785, 788 (8th Cir.2003) (internal citations omitted). The Eighth Circuit Court of Appeals recently discussed the deference to be given to an arbitration award, and the situations in which a district court can modify, vacate or correct an arbitration award:

When reviewing an arbitral award, courts accord "an extraordinary level of deference" to the underlying award itself, *Keebler Co. v. Milk Drivers & Dairy Employees Union, Local No. 471,* 80 F.3d 284, 287 (8th Cir.1996), because federal courts are not authorized to reconsider the merits of an arbitral award "even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *Bureau of Engraving, Inc. v. Graphic Communication Int'l Union, Local 1B,* 284 F.3d 821, 824 (8th Cir.2002) (quoting *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)). Indeed, an award must be confirmed even if a court is convinced the arbitrator committed a serious error, so "long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Bureau of Engraving,* 284 F.3d at 824 (quoting *Misco,* 484 U.S. at 38, 108 S.Ct. 364).

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, established "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Thus, the FAA only allows a district court to vacate an arbitration award

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

Similarly, under 9 U.S.C. § 11 a reviewing court may only modify the arbitrator's award

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11.

A "district court must take the award as it finds it and either vacate the entire award using section 10 or modify the award using section 11." *Legion Ins. Co. v. VCW, Inc.*, 198 F.3d 718, 721 (8th Cir.1999). The deference owed to arbitration awards, however, "is not the equivalent of a grant of limitless power," *Leed Architectural Prods., Inc. v. United Steelworkers of Am., Local 6674*, 916 F.2d 63, 65 (2d Cir.1990), and "courts are neither entitled nor encouraged simply to 'rubber stamp' the interpretations and decisions of arbitrators." *Matteson v. Ryder Sys. Inc.*, 99 F.3d 108, 113 (3d Cir.1996). Thus, courts may also vacate arbitral awards which are "completely irrational" or "evidence[ ] a manifest disregard for the law." *Hoffman v. Cargill Inc.*, 236 F.3d 458, 461 (8th Cir. 2001) (internal quotations and citations omitted).

*Stark v. Sandberg, Phoenix & von Gontard, P.C.*, 381 F.3d 793, 798–99 (8th Cir. 2004). With these standards in mind, the court turns to consideration of the parties' various contentions regarding the arbitration decision at issue in this litigation.[1]

### C. Review Of Arbitration Decision At Issue In Pending Litigation

#### 1. Essence of collective bargaining agreement

■ Electrolux initially asserts that the arbitrator's decision was unfaithful to the collective bargaining agreement and must be reversed. The UAW, on the other hand, asserts that the arbitrator's decision must be enforced because it draws its essence from the collective bargaining agreement. The collective bargaining agreement between Electrolux and the UAW provides that an employee may discharged for "just cause." Defendants' App. at 17. The collective bargaining agreement further provides that:

> The Company shall establish and publish a Family and Medical Leave of Absence Policy consistent with the provisions of the Family and Medical Leave Act of 1993. The Company may, from time to time, amend its policy, but under no circumstances shall an employee receive less benefits than those provided under the Family and Medical Leave Act of 1993.

Defendants' App. at 18. The collective bargaining agreement also provides that: "[a]ttendance related disciplinary action

---

1. Although Electrolux has sought to vacate the arbitration under both federal and Iowa state law, federal courts are not required to apply state law unless it is clear that the parties intended state arbitration law to apply. *UHC Mgt. Co. v. Computer Sciences Corp.*, 148 F.3d 992, 997 (8th Cir.1998); *Doctor's Associates, Inc. v. Distajo*, 107 F.3d 126, 131 (2d Cir.), *cert. denied*, 522 U.S. 948, 118 S.Ct. 365, 139 L.Ed.2d 284 (1997); *National* *Union Fire Ins. Co. of Pittsburgh, Pa. v. Belco Petroleum Corp.*, 88 F.3d 129, 134–35 (2d Cir.1996). Here, the court divines no such intent from the language in the present agreement. The agreement makes no reference to the Iowa Uniform Arbitration Act. The court, therefore, will apply the Federal Arbitration Act when considering the parties' cross-motions for summary judgment.

shall be in line with the provisions of the plant's Attendance Policy." Defendants' App. at 17. In turn, Electrolux's attendance provides that: "Any absences of Sickness & Accident leave which do not qualify for FMLA (Family Medical Leave Act) and are less than 10 working days = 1 point." Defendants' App. at 19. Absences which are covered under the FMLA do not result in a point reduction. Thus, the collective bargaining agreement between Electrolux and the UAW incorporates by reference the provisions of the FMLA. As a result, the court will briefly review some of the cogent requirements of the FMLA.

The FMLA provides, subject to the certification requirements of 29 U.S.C. § 2913, that:

> an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period for one or more of the following:
>
> . . . . .
>
> (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

29 U.S.C. § 2612(a)(1)(D).

The term "serious health condition" signifies "an illness, injury, impairment, or physical or mental condition that involves ... (A) inpatient care in a hospital, hospice, or residential medical care facility or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). The Department of Labor's regulations provide a more detailed explanation of what qualifies as a "serious health condition" under the FMLA:

> (a) For purposes of FMLA, "serious health condition" entitling an employee to FMLA leave means an illness, injury, impairment, or physical or mental condition that involves:
>
> . . . . .

> (2) *Continuing treatment* by a health care provider. A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:
>
> (i) A period of incapacity (i.e., inability to work, attend school or perform other regular activities due to a serious health condition, treatment thereof, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
> (A) Treatment two or more times by a health care provider ... or
>
> (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.
>
> . . . . .
>
> (iii) Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:
>
> (A) Requires periodic visits for treatment by a health care provider ...;
>
> (B) Continues over an extended period of time ...; and
>
> (C) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.)
>
> . . . . .
>
> (b) Treatment for the purposes of paragraph (a) of this section includes (but is not limited to) examinations to determine if a serious health condition exists and evaluations of the condition. Treatment does not include routine physical examinations... Under paragraph (a)(2)(i)(B), a regimen of continuing treatment includes, for example, a course of prescription medication (e.g.,

an antibiotic) or therapy requiring special equipment to resolve or alleviate the health condition (e.g., oxygen). A regimen of continuing treatment that includes ... activities that can be initiated without a visit to a health care provider, is not, by itself, sufficient to constitute a regimen of continuing treatment for purposes of FMLA leave.

. . . . .

(e) Absences attributable to incapacity under paragraphs (a)(2)(ii) or (iii) qualify for FMLA leave even though the employee ... does not receive treatment from a health care provider during the absence, and even if the absence does not last more than three days. For example, an employee with asthma may be unable to report for work due to the onset of an asthma attack or because the employee's health care provider has advised the employee to stay home when the pollen count exceeds a certain level. 29 C.F.R. § 825.114.

Employers, under the FMLA, "may require that a request for leave ... be supported by a certification issued by the health care provider of the eligible employee." 29 U.S.C. § 2613(a). Federal courts have deemed a certification to be sufficient

> if it states the date on which the serious health condition commenced, the probable duration of the condition, the appropriate medical facts within the knowledge of the health care provider regarding the condition, and a statement that the employee is unable to perform the functions of the position of the employee.

*Parris v. Miami Herald Pub. Co.,* 216 F.3d 1298, 1302 n. 2 (11th Cir.2000) (citing 29 U.S.C. § 2613(a)-(b)).

The FMLA further requires that an "employee shall provide, in a timely manner, a copy of such certification to the employer." 29 U.S.C. § 2613(a). The Department of Labor's regulations implementing the FMLA specifically provide that when providing medical certification before the leave period begins is impossible, "the employee must provide the requested certification to the employer within the time frame requested by the employer (which must allow at least 15 calendar days after the employer's request), unless it is not practicable under the particular circumstances to do so despite the employee's diligent good faith efforts." 29 C.F.R. § 825.305(b). However, while an employer may require certification from the employee's physician, the employer must give "the employee at least 15 calendar days in which to submit it." *Rager v. Dade Behring, Inc.,* 210 F.3d 776, 777 (7th Cir.2000) (citing 29 C.F.R. § 825.305). An employer may also provide for a more generous deadline or dispense with the certification requirement in its entirety. *Rager,* 210 F.3d at 777. Moreover, "[a]t the time the employer requests certification, the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification." 29 C.F.R. § 825.305(d). The Department of Labor's regulations further require that "[t]he employer shall advise an employee whenever the employer finds a certification incomplete, and provide the employee a reasonable opportunity to cure any deficiency." 29 C.F.R. § 825.305(d).

Here, upon review of Arbitrator Bernstein's arbitration decision, the court is compelled to conclude that the arbitration decision draws its essence from the collective bargaining agreement between Electrolux and the UAW. As the Eighth Circuit Court of Appeals has instructed:

> An award is "irrational where it fails to draw its essence from the agreement";

it "manifests disregard for the law where the arbitrators clearly identify the applicable, governing law and then proceed to ignore it." [*Hoffman v. Cargill Inc.*, 236 F.3d 458] at 461–62 [ (8th Cir.2001) ]. "An arbitrator's award draws its essence from the [parties' agreement] as long as it is derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." *Johnson Controls, Inc., Sys. & Services Div. v. United Ass'n of Journeymen*, 39 F.3d 821, 825 (7th Cir.1994) (internal quotation marks omitted).

*Boise Cascade Corp. v. Paper Allied–Indus., Chem. and Energy Workers (PACE), Local 7–0159*, 309 F.3d 1075, 1080 (8th Cir.2002).

The collective bargaining agreement between Electrolux and the UAW clearly contemplated that Electrolux's employees would not receive less benefits under Electrolux's FMLA policy than they would receive under the FMLA. The arbitrator concluded that Cook's absence on July 31, 2002, "is at least arguably based on a 'serious medical condition' protected by the FMLA." Compl. ¶ 18; Ex. F at 7. The arbitrator supported this premise based on the fact that Electrolux had, on three prior occasions, within the preceding eleven months, credited Cook with absences covered under the FMLA where Cook's absences were related to her gastric problems. On each of these occasions, moreover, Electrolux had not required Cook's health care providers to certify those absences as qualifying for FMLA leave. In addition, Arbitrator Bernstein found that Cook had submitted a proper medical certification under the FMLA:

> [T]he papers submitted by the Grievant constituted a proper medical certification under the FMLA. They were prepared by a Nurse Practitioner, who is specifically recognized as a "health care provider" under the regulations of the Department of Labor. The certification explicitly found that the Grievant's medical condition qualified as a "serious health condition." Although she did not specifically state that the Grievant's condition incapacitated her on July 31, the Nurse Practitioner did certify that her absence on July 31 was "related to her GERD." This is close enough.

Compl. ¶ 18; Ex. F at 8. Finally, in determining that Electrolux had discharged Cook without good cause, Arbitrator Bernstein found that Electrolux had violated the FMLA in two material respects:

> First of all, the applicable regulations specifically require that an employer requesting certification must give the employee at least fifteen days to provide that certification. However, in this case, the Employer terminated the Grievant one day after it made its request for certification and refused to delay its action for even a few days to give the Grievant an opportunity to provide the document. Secondly, the Company did not have the right under the FMLA to reject the certification as less credible than the contrary opinion of the Physician's Assistant that the Grievant saw on August 1. Section 103 of the FMLA specifically provides that an employer who "has reason to doubt the validity" of a certification may challenge the certification by requiring the employee to obtain, at the employer's expense, the opinion of a second health care provider designated by the employer. If the two opinions disagree, the statute stipulates that the employer can require, at its expense, that the matter be referred to a third health care provider whose opinion is final and binding on both the parties. In this case, it could be argued that (sic) opinion of Physician Assistant Syferd could be considered to be equiva-

lent to the second opinion contemplated in the statute. However, even though the two opinions differed, the statute did not give the employer the right to prefer the second opinion over the first. Instead, it mandated that the matter be referred to a third health care provider. The Company failed to follow the required procedure, and its failure is fatal to its case.

Compl. ¶ 18; Ex. F at 9–10.

Because the arbitrator plainly noted the interplay between the collective bargaining agreement and the leave provisions of the FMLA in his analysis, it is clear that the arbitrator's award draws its essence from the collective bargaining agreement. *See Boise Cascade Corp.*, 309 F.3d at 1080; *Johnson Controls, Inc., Sys. & Servs. Div.*, 39 F.3d at 825. Therefore, this portion of Electrolux's Motion For Summary Judgment is denied. Further, as the court has held that the arbitration award drew its essence from the collective bargaining agreement, UAW is entitled to judgment as a matter of law in this regard, and this portion of UAW's Motion For Summary Judgment is granted.

### 2. Manifest disregard of the law

Electrolux also contends that the arbitrator's decision must be vacated because the arbitrator engaged in manifest disregard for the law. The Second Circuit Court of Appeals has recognized manifest disregard of the law as an additional ground for vacation of an arbitration decision. As the Second Circuit Court of Appeals explained in *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir.2003), the manifest disregard standard finds its roots in "dicta" from the Supreme Court's decision in *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). From *Wilko*'s dicta, the Second Circuit Court of Appeals "in-

ferred that in addition to the statutory grounds set forth in the FAA, an arbitral award may be vacated if manifest disregard of the law is plainly evident from the arbitration award." *Duferco*, 333 F.3d at 388. However, the Second Circuit Court of Appeals has on several occasions stressed the "severely limited" nature of the judicially created manifest disregard standard. *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 208 (2d Cir.2002); *see Hoeft v. MVL Group, Inc.*, 343 F.3d 57, 67–68 (2d Cir.2003) ("Judicial review of an arbitration award for manifest disregard of the law is 'severely limited.' "); *Duferco*, 333 F.3d at 389 ("Our review under the doctrine of manifest disregard is 'severely limited' ... It is highly deferential to the arbitral award and obtaining judicial relief for the arbitrator's manifest disregard of the law is rare.") (citations omitted); *Postlewaite v. McGraw–Hill*, 333 F.3d 42, 49 (2d Cir. 2003) ("[J]udicial review of arbitration is very limited."); *GMS Group, L.L.C. v. Benderson*, 326 F.3d 75, 77 (2d Cir.2003) ("We have repeatedly stressed that our review under the doctrine of manifest disregard is 'severely limited.' "). In *Duferco*, the Second Circuit Court of Appeals specifically noted that since 1960 it had "vacated some part or all of an arbitral award for manifest disregard in only four out of at least 48 cases where we applied the standard" and that all but one of the cases finding manifest disregard involved an arbitral decision in which the arbitrators had exceeded their legal powers. *Duferco*, 333 F.3d at 389. The court observed that the Second Circuit's "reluctance over the years to find manifest disregard is a reflection of the fact that it is a doctrine of last resort—its use is limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent but where none of the provisions of the FAA apply." *Id.* The Eighth Cir-

cuit Court of Appeals has adopted the Second Circuit Court of Appeals's restricted view of what constitutes manifest disregard:

> Manifest disregard of the law "is more than a simple error in law or a failure by the arbitrators to understand or apply it; and, it is more than an erroneous interpretation of the law." *Duferco Int'l*, 333 F.3d at 389 (citations omitted). "Our disagreement with an arbitrator's interpretation of the law or determination of the facts is an insufficient basis for setting aside his award." *El Dorado Sch. Dist.*, 247 F.3d at 847 (citing *Hoffman*, 236 F.3d at 462).

*Stark*, 381 F.3d at 801. The court of appeals further pointed out that: " '[a] party seeking vacatur [based on manifest disregard of the law] bears the burden of proving that the arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it.' " *Id.* (quoting *Duferco Int'l Steel Trading*, 333 F.3d at 389). With these standards in mind, the court turns to consideration of Electrolux's two assertions on this front: that the arbitrator ignored Cook's failure to provide an FMLA certification form medically certifying her FMLA incapacity on July 31, 2002; and, that the arbitrator permitted Cook to engage in "doctor-shopping" in violation of the FMLA. The court will take up each of these assertions in turn.

### a. Certification of incapacity

■ Electrolux asserts that the arbitrator's decision was based on manifest disregard of the law because Cook did not submit to Electrolux a completed FMLA certification form which indicated that Cook was incapacitated on July 31, 2002. The court disagrees. First, the court notes that the FMLA does not require an employee to submit a medical certification in order to be eligible for FMLA leave.

Instead, the FMLA gives to an employer the option to request an employee to submit certification. *See* 29 U.S.C. § 2613(a). Although Electrolux choose this option here, it failed to follow through with the regulations regarding such requests for certification. First, Electrolux failed to comply with the regulation that it was required to give Cook fifteen days in which to submit the requested medical certification. *See* 29 C.F.R. § 825.305(b). Instead, Electrolux terminated Cook one day after requesting medical certification. More importantly, Electrolux did not give Cook notice of what it viewed as a deficiency in the medical certification form submitted by Cook, which is required under the Department of Labor's regulations. *See* 29 C.F.R. § 825.305(d). Nor did Electrolux give Cook an opportunity to cure the alleged deficiency in the medical certification form, again as required under the Department of Labor's regulations. *See* 29 C.F.R. § 825.305(d). Placed in this context, where the employer who requested medical certification itself failed to follow the implementing regulations, the arbitrator's decision that the medical certification Cook had submitted was "close enough to qualify" for FMLA leave was not a manifest disregard of the law. Therefore, this portion of Electrolux's Motion For Summary Judgment is denied. Likewise, as UAW is entitled to judgment as a matter of law that the arbitration decision was not a result of the arbitrator's manifest disregard of the law with regard to the arbitrator's finding that the medical certification submitted by Cook was "close enough to qualify," UAW's motion for summary judgment in this regard is granted.

### b. Second medical opinion

■ Electrolux further argues that the arbitrator engaged in manifest disregard

of the law when the arbitrator considered the medical certification of Nurse Guess, the second health care provider to have seen the UAW grievant. Electrolux contends that the FMLA only permits employers to obtain a second medical opinion. Electrolux bases this assertion on the text of 29 U.S.C. § 2613(c)(1), which provides:

> In any case in which the employer has reason to doubt the validity of the certification provided under subsection (a) of this section for leave under subparagraph (C) or (D) of section 2612(a)(1) of this title, the employer may require, at the expense of the employer, that the eligible employee obtain the opinion of a second health care provider designated or approved by the employer concerning any information certified under subsection (b) of this section for such leave.

29 U.S.C. § 2613(c)(1). While § 2613(c)(1) clearly gives an employer the right to seek a second medical opinion, it contains no limitation or restriction on an employee obtaining a second medical opinion. Moreover, the court notes that Electrolux has not directed the court to any federal court decision placing a limit on an employee obtaining a second health care provider opinion. Indeed, in contrast to Electrolux's assertion, the Seventh Circuit Court of Appeals observed that:

> The FMLA circumscribes the employer's right to challenge a physician's certification that leave is FMLA-qualifying, see 29 U.S.C. § 2613, but nothing in the Act or regulations limits the employee's ability to produce a medical opinion that contradicts a prior negative certification originally provided by the employee.

*Stoops v. One Call Communications, Inc.,* 141 F.3d 309, 313 (7th Cir.1998). The clear inference to be drawn from this statement is that an employee can obtain a second opinion from a medical care provider. Given the complete absence of federal authority precluding an employee from obtaining a second medical opinion, the court concludes that the arbitrator's decision to consider the medical certification Cook had obtained from Nurse Guess was not a manifest disregard of the law. Therefore, this portion of Electrolux's Motion For Summary Judgment is also denied. Likewise, as consideration of the second opinion did not evince a manifest disregard of the law, UAW is entitled to judgment as a matter of law on this point. UAW's Motion for Summary Judgment is granted in this regard.

### D. Attorneys' Fees

In the UAW's Motion For Summary Judgment, the UAW requests, *inter alia,* that the court award it attorneys' fees for the costs of defending this action.

 Attorney fees generally are not awarded to the prevailing party in federal litigation unless authorized by statute or warranted by the bad faith, wanton or vexatious conduct of the losing party. *See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258–60, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); see also *Jaquette v. Black Hawk County, Iowa,* 710 F.2d 455, 462 (8th Cir.1983) (noting that a court may "assess attorney fees against a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."). The Federal Arbitration Act does not contain any provisions providing for awards of attorneys' fees to successful or prevailing parties. *Menke v. Monchecourt,* 17 F.3d 1007, 1009 (7th Cir.1994) ("[T]here is nothing in the Federal Arbitration Act which provides attorneys' fees to a party who is successful in seeking confirmation of an arbitration award in the federal courts."); *see Harter v. Iowa Grain Co.,* 220 F.3d 544, 557 (7th Cir.2000) (citing *Menke* for the same principle); *Raytheon Co. v. Computer Distrib., Inc.,*

632 F.Supp. 553, 560 (D.Mass.1986) (noting that the FAA "does not expressly provide for an award of attorneys' fees in arbitration proceedings."). An unjustified refusal to abide by an arbitrator's award may constitute bad faith for the purpose of awarding attorneys' fees. *Int'l Union of Petroleum and Industrial Workers v. Western Industrial Maintenance, Inc.*, 707 F.2d 425, 428 (9th Cir.1983); *see also Lackawanna Leather Co. v. United Food and Commercial Workers Int'l Union*, 706 F.2d 228, 232 (8th Cir.1983) (en banc). Electrolux had substantial grounds justifying its refusal to comply with the arbitrator's award. Accordingly, Electrolux's justified refusal to comply with the award does not constitute evidence of bad faith and the UAW is not entitled to recover attorneys' fees. Therefore, this portion of the UAW's Motion For Summary Judgment is denied.

### III. CONCLUSION

For the foregoing reasons, Electrolux's Motion For Summary Judgment is denied. The UAW's Motion For Summary Judgment is granted in part in that the court confirms the decision of the arbitrator and orders that Electrolux comply immediately and fully with the decision of the arbitrator. Consistent with the arbitration award, Electrolux is ordered to pay the UAW grievant back pay for lost wages and benefits from August 2, 2002, through December 5, 2003. The UAW's request for summary judgment on its claim for attorneys' fees incurred in defending this action is denied. Judgment shall enter accordingly.

**IT IS SO ORDERED.**