# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1772

_____

| | |
|---|---|
| Bureau of Engraving, Inc., | * |
| | * |
| Appellant, | * |
| | * Appeal from the United States |
| v. | * District Court for the District |
| | * of Minnesota |
| Graphic Communication | * |
| International Union, Local 1B, | * |
| | * |
| Appellee | * |

_____

Submitted: February 14, 2001
Filed: April 1, 2002

_____

Before LOKEN and RILEY, Circuit Judges, and KORNMANN,[1] District Judge.

_____

KORNMANN, District Judge

Bureau of Engraving, Inc., (Bureau) appeals the district court's[2] order upholding and confirming an arbitration award in favor of Graphic Communications International Union, Local 1B (Union).

_____

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota, sitting by designation.

[2]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

# I. BACKGROUND

This case arises out of a grievance filed by the Union contesting Bureau's decision to terminate the employment of Linda Puffer (Puffer) pursuant to the terms and conditions of the then-existing collective bargaining agreement ("CBA"). In 1990, Puffer, a Union member, sustained a back injury during the course of her employment for Bureau. The injury qualified Puffer for worker's compensation benefits and required her to abide by various work restrictions, including time off, working limited hours, and restrictions in her work activities. Puffer's condition gradually improved but in 1992 she once again injured her back while at work, necessitating further work restrictions.

In 1996, Puffer underwent surgery in an attempt to alleviate the pain in her back and improve her condition. When she returned to Bureau for work, the work restrictions remained. In 1997, a physician determined that Puffer had reached her maximum medical improvement. Pursuant to that determination, Bureau offered Puffer full time employment in her pre-injury position.

Upon her return, Puffer's doctor insisted that her medical restrictions be followed. Despite such insistence, Puffer returned to her pre-injury position and, soon thereafter, began experiencing severe back pain while performing her work related duties. On June 16, 1997, Puffer's pain became intolerable. She contacted her doctor and was told to go to the emergency room. Emergency room physicians prescribed various treatments and instructed Puffer not to return to work. Puffer's own doctor concurred and instructed her to remain off work for one week. When her condition did not improve, Puffer's physician extended the period for a second week.

As required by the CBA, Puffer submitted the necessary paperwork to Bureau to secure her medical leave. On June 19, 1997, Bureau reluctantly prepared a letter granting Puffer a two week medical leave. The letter did not, however, specify a date

by which she was to return to work. On approximately June 23, 1997, Puffer's physician told her that there was nothing further that he could do for her and referred her to a rehabilitation specialist. An appointment with the specialist was scheduled for the end of July. Puffer's doctor told her to remain off work until she could be seen by the specialist.

On July 1, 2, and 3, 1997, Puffer called Bureau and reported that she was still on medical leave and would not be able to work. The Bureau, however, believed that Puffer's medical leave expired on June 30, 1997, and thus counted her absences at the beginning of July as unexcused absences. On July 7, 1997, Bureau informed Puffer that it was terminating her employment for excessive absenteeism under the CBA.

Section 35 of the CBA sets forth the attendance policy. The "corrective action" component to section 35 sets forth a graduated scale of punishment for absenteeism. After five absences, the employee is to receive a verbal warning; after eight, a written warning; after eleven, another written warning with a five day work suspension; and, finally, at thirteen absences, termination[3]. Section 35 also details the circumstances in which an employee may provide documentation in order to excuse an absence for job related injury or illness. Additionally, section 35 states that management has the responsibility to help its employees improve their attendance.

The Union grieved Puffer's termination. The Union argued that Puffer's absences on July 1, 2, and 3 were medically necessary and should have been excused. Unable to resolve the dispute informally, the parties submitted the issue to arbitration pursuant to the terms of the CBA. In framing the issue for the arbitrator, the parties entered into the following stipulation: "Whether the Employer had just cause to terminate the employment of grievant, Linda Puffer, and if not, what should be the

---

[3]It is undisputed that Puffer never received from Bureau the benefits and the warnings of the graduated scale, as she did not receive a verbal warning after five absences, a written warning after eight, or an additional written warning with suspension after eleven absences.

remedy?" In resolving the issue, the arbitrator concluded that Puffer had accrued thirteen absences under section 35. However, the arbitrator, in accordance with the stipulated issue and the just cause provision of the CBA, section 4(b), determined that no just cause existed for her termination and ordered Bureau to reinstate Puffer. The arbitrator also awarded her backpay.

The Bureau then moved the dispute to district court. The Union filed a motion to have the arbitration award confirmed. Bureau filed a motion to vacate the award, arguing that the arbitrator exceeded his authority by ignoring the plain language of section 35 and by conducting a just cause analysis. The district court denied Bureau's motion to vacate, noting that both section 4(b) and the stipulation supported the arbitrator's just cause analysis.[4] The district court granted the Union's motion and confirmed the award.

Bureau appeals, reiterating its argument that the arbitrator exceeded his authority by proceeding to a just cause analysis after having concluded that Puffer accrued thirteen absences under section 35.

## II. STANDARD OF REVIEW

---

[4]In determining that the arbitration award drew its essence from the CBA, the district court concluded that section 35 was ambiguous, thereby requiring it to pay the highest deference to the arbitrator's interpretation. That determination stands in contrast to the arbitrator's conclusion that section 35 was not ambiguous. In its arguments to this Court, Bureau maintains that the district court's decision on ambiguity which decision is at odds with the arbitrator's is sufficient for reversal. We disagree. While the two ambiguity determinations are at odds with each other, we believe that the stipulation and section 4(b) were ample authority for the arbitrator's decision. The district court's ambiguity analysis was simply not necessary to support and confirm the award. Thus, the tension between the ambiguity determinations is of no moment here.

We review *de novo* the district court's legal conclusions in its denial of the motion to vacate and its confirmation of the award. *See* Trailmobile Trailer, LLC v. Int'l Union of Electronic, Electrical, Salaried, Machine and Furniture Workers, AFL-CIO, 223 F.3d 744, 746 (8th Cir. 2000).

Judicial review of a final arbitration award is extremely narrow. *See id.* "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987). We will not "reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *Id*. at 36. "In other words, we 'do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.'" Homestake Mining Co. v. United Steelworkers of America, 153 F.3d 678 (8th Cir. 1998), quoting United Paperworkers, 484 U.S. at 38.

## III. DISCUSSION

Bureau argues that the arbitrator erred by ignoring the plain language of section 35 and by proceeding to a just cause analysis. In arguing that the arbitrator ignored the plain language of section 35, Bureau reads language into section 35 that is not found there and ignores section 4(b)'s just cause provision. Nothing in section 35 states that thirteen absences satisfies section 4(b)'s just cause requirement. While that is certainly one reasonable interpretation, the arbitrator's decision that section 4(b) and the stipulation of the parties gave him the authority to conduct a just cause analysis is reasonable as well and the interpretation of contract language is within the arbitrator's domain. *See* Trailmobile, 223 F.3d at 747. Thus, while Bureau assumed that thirteen absences equaled just cause for termination, thereby satisfying section 4(b), the arbitrator concluded otherwise. That conclusion will not be disturbed here.

Bureau reads section 35 in isolation. The law, however, demands that collective bargaining agreements be construed as a whole with the terms read in the context of the entire agreement. *See* Sheet Metal Workers Int'l Assoc. v. Lozier Corp., 255 F.3d 549, 551 (8th Cir. 2001) (quotations and citations omitted). Section 4(b) authorizes a just cause analysis. As noted above, there is nothing in section 35 or elsewhere that necessarily renders section 4(b) meaningless when considering the termination of an employee under section 35. The law imposes the obligation on the arbitrator of harmonizing possibly discordant provisions of a CBA. *See id.* Thus, the arbitrator's decision to read section 35 in light of section 4(b) is reasonable and lies within the sphere of his obligation. Given our limited standard of review, we will not second guess the award.

We need not decide, however, whether section 35 includes a just cause requirement. This stems from the parties' stipulation. "When two parties submit an issue to arbitration, it confers authority upon the arbitrator to decide that issue." Teamsters Local 238 v. Cargill, 66 F.3d 988, 990-91 (8th Cir. 1996) citing First Options, Inc. v. Kaplan, 514 U.S. 938, 943 (1995). "Once the parties have gone beyond their promise to arbitrate and have actually submitted an issue to an arbiter, we must look both to their contract and to the submission of the issue to the arbitrator to determine his authority." John Morrell & Co. v. Local Union 304A, 913 F.2d 544, 561 (8th Cir. 1990) *cert. denied*, 500 U.S. 905 (1991).

As noted by the district court, the parties' decision to frame the issue for the arbitrator as one including just cause for termination undoubtedly colored the arbitrator's decision. For reasons known only to it, Bureau agreed to stipulate to the just cause analysis. The stipulation simply called for a "just cause" analysis and made no mention of section 35. Having entered into the just cause stipulation, it is disingenuous for Bureau to argue now that the arbitrator acted improperly by conducting the very analysis Bureau asked it to undertake. "The parties' request gave the arbitrator the authority to decide the issue of whether just cause existed for

termination." Sheet Metal Workers, 255 F.3d at 551. Having requested that the arbitrator determine whether Puffer was terminated for just cause, Bureau will not now be heard to complain that the arbitrator performed that very analysis. *Id., see also* United Paperworkers, 484 U.S. at 37 ("[T]he moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for") (quotation marks and citation omitted), and IMC-Agrico Co. v. Int'l Chem. Workers Council of the United Food & Commercial Workers Union, 171 F.3d 1322, 1329 (11th Cir.1999) ("The arbitrator's decision in this case was exactly what the parties bargained for and it should not be disturbed").

## IV. CONCLUSION

The arbitrator had the authority to conduct the just cause analysis based on the CBA and the parties' stipulation. The district court, therefore, rightly denied Bureau's motion to vacate and correctly confirmed the award. Accordingly, we affirm the decision of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.