# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-4080

_____

| | | |
|---|---|---|
| Electrolux Home Products, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Northern |
| | * | District of Iowa. |
| The United Automobile Aerospace and | * | |
| Agricultural Implement Workers of | * | |
| America; The United Automobile | * | |
| Aerospace and Agricultural Implement | * | |
| Workers of America, Local No. 442 | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted: June 23, 2005
Filed: August 5, 2005

_____

Before MELLOY, HEANEY, and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

Plaintiff-Appellant Electrolux Home Products ("Electrolux") appeals the district court's[1] denial of its motion for summary judgment on a claim to vacate an industrial arbitration award. Electrolux also appeals the district court's grant of summary judgment in favor of the defendant-appellees on a claim for enforcement of the arbitration award. We affirm.

I.      Factual Background

Electrolux owns and operates a production facility in Webster City, Iowa. The United Automobile Aerospace and Agricultural Implement Workers of America (the "Union") and the United Automobile Aerospace and Agricultural Implement Workers of America, Local No. 442 ("Local 442") (collectively the "UAW") are the collective bargaining unit representatives for the hourly workers at the Iowa facility. This case involves an arbitrator's interpretation of a collective bargaining agreement (the "Agreement") between UAW and Electrolux and application of the Agreement to a collective bargaining unit employee, Deborah Cook.

Under the Agreement, Electrolux has the right to terminate employees for cause. Also, the Agreement provides, "Attendance related disciplinary action shall be in line with the provisions of the plant's Attendance Policy." The Agreement further provides that Electrolux:

> [S]hall establish and publish a Family and Medical Leave of Absence Policy consistent with the provisions of the Family and Medical Leave Act of 1993 ["FMLA"]. The Company may, from time to time, amend the policy, but under no circumstances shall an employee receive less benefits than those provided under the Family and Medical Leave Act of 1993 .

---

[1]The Honorable Mark W. Bennett, Chief Judge, United States District Court for the Northern District of Iowa.

Electrolux has such a policy under which employees are required to document their absences:

> Any leave forms not returned within the required time frame, incomplete or improperly completed leave forms, or leave requests which are denied, could result in the loss of attendance points and employees could be subject to other applicable contractual language regarding unexcused absences from work.
>
> . . .
>
> Any eligible employee applying for FMLA leave must obtain a form from Human Resources.
>
> . . .
>
> If circumstances occur where the employee cannot reasonably provide the required thirty (30) day notice, the employee must notify [Human Resources] as soon as possible. The employee must obtain the required form and return the completed document as soon as reasonably possible.

"Attendance points" refer to credits in a merit/demerit system that Electrolux established as its attendance policy. Under the attendance policy, an employee starts with eight attendance points. The employee earns points for sufficient periods without unexcused absences and loses points for unexcused absences. Absences that qualify under the provisions of the FMLA are excused and do not result in a loss of attendance points. It has been a practice at the Iowa facility to presume that absences of three or more consecutive days involve situations that qualify under the FMLA. Also, it has been a practice at the facility to demand medical certification to explain absences from work for periods of less than three days. It is undisputed that it is cause for termination if an employee uses all of his or her attendance points.

Electrolux fired Deborah Cook on August 2, 2002 for exhausting all eight of her attendance points. Ms. Cook does not dispute earlier determinations related to the loss of her first seven points. She disputes only the decision to subtract an attendance point for a one-day absence on July 31, 2002. We discuss that day, her subsequent attempts to document her absence, and, to a limited extent, her medical history.

Ms. Cook left work early on July 31, 2002 after telling her supervisor that her stomach hurt and after receiving permission to leave. Her regular physician could not see her that day. On August 1, after her regular work shift, she was able to see a physician's assistant in nearby Fort Dodge, Iowa. She reported nausea to the physician's assistant who diagnosed her with gastroesophageal reflux disease ("GERD") and prescribed a proton pump inhibitor. The physician's assistant was neither designated nor approved by Electrolux to make FMLA determinations, but the physician's assistant was, in fact, qualified under the FMLA. The physician's assistant refused Ms. Cook's request to certify the ailment as incapacitating or as protected by the FMLA. When representatives from Electrolux contacted the physician's assistant after August 1, the physician's assistant said that she would not recognize the event as an FMLA occurrence.

On August 2, 2002, Electrolux terminated Ms. Cook's employment because she had not submitted a leave form certifying the absence as an FMLA occurrence. Ms. Cook asked for more time so that she could see her regular doctor, but Electrolux denied her request. Ms. Cook claims that she contacted the Department of Labor and was told that she could obtain a second opinion. She also claims that she contacted her regular doctor's office and was told by someone at that office (not her regular doctor) that her doctor could see her in the future but that he would not override another person's decision.[2]

On August 5, 2002, a nurse practitioner in Gowrie, Iowa, examined Ms. Cook. The nurse practitioner was neither designated nor approved by Electrolux to make FMLA determinations, but the nurse practitioner was, in fact, qualified under the FMLA. Ms. Cook did not tell the nurse practitioner that she had been examined by,

_____

[2]Electrolux characterizes this statement from someone at the doctor's office as an adverse medical opinion. This characterization goes beyond any facts found by the arbitrator.

-4-

or received a prescription from, the physician's assistant three days earlier. Ms. Cook also did not tell the nurse practitioner that the physician's assistant had refused to certify the July 31 absence. The nurse practitioner wrote Ms. Cook a prescription for a different proton pump inhibitor and filled out an FMLA leave form. On the form, in response to the question, "[d]escribe the medical facts which support your certification, including a brief statement as to how the medical facts meet the criteria of one of these categories [of FMLA qualifying conditions]," the nurse practitioner answered, "Chronic gastritis including episodes of acute epigastric pain. This condition may cause episodic absence due to the illness." In response to the question, "[i]f medical leave is required for the employee's absence from work because of the employee's own condition (including absences due to pregnancy or a chronic condition), is the employee unable to perform any kind of work," the nurse practitioner answered, "During times of acute onset of symptoms, employee unable to work."

Ms. Cook offered these papers from the nurse practitioner to Electrolux. The company told her that it did not have to accept documentation provided from a health care provider who was not her treating physician and who saw her that many days after the absence.

Ms. Cook then filed a grievance under the collective bargaining agreement. It was undisputed that the collective bargaining agreement mandated arbitration of the grievance. An arbitration hearing took place on July 24, 2003. At the hearing, the physician's assistant who had treated Ms. Cook testified that, on July 31, 2002, Ms. Cook was not incapacitated, did not suffer from a serious health condition within the meaning of the FMLA, and did not qualify for FMLA leave. The nurse practitioner who treated Ms. Cook also testified. She stated that she had not examined Ms. Cook until days later and could not state under oath that Ms. Cook had been incapacitated on July 31, 2002. The nurse practitioner stated that Ms. Cook had not told her of the

prior examination by, and attempt to obtain certification from, the physician's assistant.

The arbitrator questioned the nurse practitioner about GERD. The nurse practitioner stated that GERD is basically heartburn and that Ms. Cook reported severe epigastric pain. The arbitrator questioned the nurse practitioner about whether there would be any way to test the severity of the pain, whether the pain could be severe enough to be incapacitating, and whether treatment with over-the-counter medicines could or would work. The nurse practitioner explained that there is no real way to test or verify the level of pain. The nurse practitioner also answered that "it's possible" that treatment by over-the-counter medicines would work and permit someone with GERD to avoid seeing a physician. She also stated that she made her diagnosis and prescribed medicine based on Ms. Cook's complaints and that she would have treated Ms. Cook the same way if Ms. Cook had visited her earlier.

Relevant to the issues presented in this case are the following facts from Ms. Cook's medical history. In July 2001, a physician diagnosed Ms. Cook with gastroenteritis. On an April 2002 leave form, a physician described her illness as gastritis. On a June 2002 leave form, a physician described her illness as "Abd. Pah, Diarrhea." On each of these occasions she missed more than three consecutive days of work: three days of work in 2001, five days in April 2002, and three days in June 2002. Electrolux did not require certification for these absences and treated the events as FMLA occurrences that did not result in attendance point losses.

On November 23, 2003, the arbitrator issued a written opinion concluding that the only issue to be decided was whether the July 31, 2002 absence was an FMLA qualified absence. He found that the evidence was sufficient to show that Ms. Cook's absence was an FMLA occurrence. He stated:

> Had [Ms. Cook] had fair warning of the danger she was in, she might well have decided to force herself to stay at work to save her job.
>
> . . .
>
> [T]he papers submitted by the Grievant constituted a proper medical certification under the FMLA. They were prepared by a Nurse Practitioner, who is specifically recognized as a "health care provider" under the regulations of the Department of Labor. The certification explicitly found that the Grievant's medical condition qualified as a "serious health condition." Although she did not specifically state that Grievant's condition incapacitated her on July 31, the Nurse Practitioner did certify that her absence on July 31 was "related to her GERD." This is close enough to qualify.

The arbitrator also rejected the argument by Electrolux that an employee cannot rely on a subsequent opinion from someone other than the original health care provider:

> The Company's primary argument is that the August 5 certification should be disregarded because it is a "second opinion" resulting from "doctor shopping," which the statute does not allow. However, there is no basis in the statute or regulations for this contention. The statute requires only that the certification be made by the "health care provider for the employee;" it does not differentiate between the treating physician and any other health care provider. The Nurse Practitioner did examine, diagnose and treat the Grievant on August 5, and that is enough to qualify her. The company did cite to a prior arbitration decision and several court opinions expressing preference for the opinion of the treating physician. However, none of those cases concerned a situation where there were conflicting opinions by different health care providers and therefore they provide no guidance for the resolution of this case.

The arbitrator ordered Electrolux to reinstate Ms. Cook to her former position and to award her back wages and benefits.

Electrolux did reinstate Ms. Cook, but did not award her back wages or benefits. Electrolux brought this action seeking to vacate the arbitration award. Electrolux filed a motion for summary judgment in which it presented various arguments alleging that the arbitrator misinterpreted the requirements of the FMLA, incorporated by reference into the collective bargaining agreement. The UAW, on Ms. Cook's behalf, brought an action to enforce the award and moved for summary judgment. Under the deferential standards applicable to the enforcement of labor arbitration awards, the district court granted summary judgment in favor of the UAW and denied Electrolux's motion to vacate the award.

II.     Discussion

We review the district court's grant of summary judgment and all of its legal determinations de novo. Bureau of Engraving, Inc. v. Graphic Comm. Int'l Union, 284 F.3d 821, 824 (8th Cir. 2002). In contrast, we extend "'an extraordinary level of deference'" to the decision of the arbitrator. Boise Cascade Corp. v. PACE Local 7-0159, 309 F.3d 1075, 1080 (8th Cir. 2002) (quoting Keebler Co. v. Milk Drivers & Dairy Employees Union, Local No. 471, 80 F.3d 284, 287 (8th Cir. 1996)). In fact, we "are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36 (1987). Accordingly, we must uphold an arbitrator's award "[a]s long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely '[the arbitrator's] own brand of industrial justice.'" Id. (quoting United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960)). Further, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." United Paperworkers, 484 U.S. at 38. Relevant to the present appeal, "'we "do not sit to hear claims of factual *or legal* error by an arbitrator as an appellate court does in reviewing decisions of

lower courts."""" Bureau of Engraving, 284 F.3d at 824-25 (emphasis added) (quoting Homestake Mining Co. v. United Steelworkers of America, 153 F.3d 678 (8th Cir. 1998) (in turn quoting United Paperworkers, 484 U.S. at 38)).

While this standard may seem harsh to parties who lose in arbitration, this standard is justified because it is exactly what the parties mutually agreed upon by electing arbitration over judicial resolution of their conflicts. See United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. at 599 ("It is the arbitrator's construction which was bargained for."). The fact that contract interpretation requires the arbitrator to interpret law that is incorporated by reference does nothing to change our standard of review. See, e.g., American Postal Workers Union v. United States Postal Service, 789 F.2d 1, 6 (D.C. Cir. 1986) ("When construction of the contract implicitly or directly requires an application of 'external law,' i.e., statutory or decisional law, the parties have necessarily bargained for the arbitrator's interpretation of the law and are bound by it.").

The Agreement in this case expressly incorporates the requirements of the FMLA, setting the FMLA as a floor for employees' leave-related benefits. Electrolux claims the arbitrator exhibited a manifest disregard for the requirements of the FMLA, and in doing so, issued a decision that did not draw its essence from the contract. Specifically, Electrolux argues that: (1) it was a violation of the FMLA to permit an employee to rely upon a second opinion that was not solicited by the employer because the FMLA contains detailed provisions that govern the use of "second opinions"; and (2) the certification was insufficient as a matter of law given the FMLA's clear requirement that the medical condition render the employee unable to work. Electrolux, however, fails to acknowledge the distinction between a possible factual or legal error in an arbitrator's decision, on the one hand, and a manifest disregard for the law, on the other.

Regarding the first issue, the admissibility of the employee-procured second opinion, it is not even clear that the arbitrator committed an error. As a result we cannot find that he acted in manifest disregard of the law. The FMLA does not expressly prohibit an employee from tendering second opinions not requested by the employer. In fact, the FMLA is silent regarding an employee's ability to rely on such opinions. In contrast, the FMLA provides a structured method that permits an employer to obtain second opinions to challenge an employee's favorable certification documents:

> In any case in which the employer has reason to doubt the validity of the certification provided under subsection (a) of this section for leave under subparagraph (C) or (D) of section 2612(a)(1) of this title, the employer may require, at the expense of the employer, that the eligible employee obtain the opinion of a second health care provider designated or approved by the employer concerning any information certified under subsection (b) of this section for such leave.

29 U.S.C. § 2613(c)(1). Electrolux argues that because this provision grants specific rights to the employer, but does not grant corresponding rights to the employee, an employee may not rely on second opinions other than those requested by the employer.

None of our cases have addressed this issue. The Seventh Circuit has addressed this issue and rejected Electrolux's argument, holding that it is permissible for an employee to submit second opinions not solicited by the employer:

> The FMLA circumscribes the employer's right to challenge a physician's certification that leave is FMLA-qualifying, see 29 U.S.C. § 2613, but nothing in the Act or regulations limits the employee's ability to produce a medical opinion that contradicts a prior negative certification originally provided by the employee.

-10-

<u>Stoops v. One Call Communications, Inc.</u>, 141 F.3d 309, 313 (7th Cir. 1998). Given the absence of direct authority to contradict the arbitrator's legal conclusion and given another circuit's adoption of the arbitrator's position, we find no manifest disregard for the law. We need not, and do not, determine whether the Seventh Circuit's approach is the proper interpretation of the FMLA. We decide only that the arbitrator's decision related to an employee's tender of a second opinion is not such a grave misreading of the FMLA (as incorporated in the Agreement) as to comprise a manifest disregard of the law and justify our disturbance of the labor arbitration award.

Regarding the second issue, the arbitrator's determination that Ms. Cook's absence was an FMLA occurrence, we understand Electrolux's concern. Here, Electrolux has a much stronger argument regarding the presence of error. In fact, our review suggests that, under a de novo standard, Electrolux might be entitled to relief. Our review, however is not de novo. It is merely to determine whether the arbitrator acted in manifest disregard of the law and acted outside the scope of his authority by reaching a decision that failed to draw its essence from the collective bargaining agreement. For the reasons discussed below, we do not find that any error by the arbitrator reached this level.

Electrolux argues first that the arbitrator acted in manifest disregard of the law by finding that the FMLA required only a showing of a "serious" medical condition and not a showing of incapacity or inability to work. To support its position, Electrolux focuses on the arbitrator's statement, "This is close enough to qualify." Electrolux also focuses on the arbitrator's statement that Ms. Cook could have forced herself to remain at work. We do not interpret the arbitrator's statements in the manner urged by Electrolux.

The arbitrator said "close enough" immediately after, and in reference to, his discussion of the nurse practitioner's certification. In the certification she identified

-11-

the ailment, described the epigastric pain as "acute," and described the ailment as incapacitating during "acute onset of symptoms." We understand the arbitrator's statement to mean that although the nurse practitioner did not expressly state that Ms. Cook was incapacitated, she implied as much in her answers to the questions on the certification form and through her statement that the absence was related to the ailment.

Further, the arbitrator's statement that Ms. Cook might have forced herself to remain at work does not demonstrate the arbitrator's rejection of an incapacity requirement. With decreased or no productivity, we are convinced many people could force themselves to stay on the job even though seriously ill. The fact that the arbitrator believed someone could be incapacitated and yet still force themselves to remain at work for a portion of a day is a reasonable interpretation of the term incapacitated. To hold otherwise would be to withhold FMLA protection unless an employee is taken from the workplace on a stretcher.

The harder question is whether the ultimate determination as to incapacity was such a grievous error as to show that the arbitrator acted in manifest disregard of the law and to place the arbitrator's award outside the "essence of the collective bargaining agreement." The balance of the evidence—the opinion of the physician's assistant and the nurse practitioner's apparent contradiction in her 2003 testimony—strongly suggests that Ms. Cook was able to work on July 31, 2003. This, however, shows at most that the arbitrator committed an error in judgment, and mere error by the arbitrator is not a basis for reversal. Bureau of Engraving, 284 F.3d at 824-25 ( "we do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts" ) (internal quotation marks omitted). The record does not suggest bad faith, dishonesty, or partiality on the part of the arbitrator. In fact, as recognized by the district court, the record demonstrates clearly that the arbitrator considered the evidence, identified the controlling FMLA provisions that were incorporated into the contract and carefully

applied the law to the facts. In short, he was "construing or applying the contract and acting within the scope of his authority." United Paperworkers, 484 U.S. at 38. Accordingly, we believe that his decision, while possibly erroneous, drew its essence from the collective bargaining agreement, and we must enforce his award.[3] United Steelworkers, 363 U.S. at 596.

We affirm the judgment of the district court.

———————————————

[3]At oral argument, counsel for Electrolux commented on the apparent economic irrationality of appealing the present decision given the facts that damages were low, back pay for Ms. Cook was relatively small, Electrolux had reinstated Ms. Cook, and Electrolux had subsequently fired Ms. Cook after she missed work again and depleted her attendance points. Counsel explained that this case carried greater significance than Ms. Cook's individual case because it would stand as precedent concerning what the company must accept from employees under the FMLA and what the FMLA requires for certification. This is a mischaracterization of the present case. All that we decide today is that Electrolux and the UAW agreed to be bound by an arbitrator's interpretations of the collective bargaining agreement and that his interpretation in Ms. Cook's case was not so gravely in error as to demonstrate an abrogation of his duty to interpret the contract. Since Electrolux and the UAW agreed to incorporate the terms of the FMLA into the agreement, they are bound by the arbitrator's interpretation of the FMLA's requirements (as long as those interpretations are not in manifest disregard of the law) in the same manner that they are bound by his interpretation of the rest of the agreement.