# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1584

_____

National Elevator Bargaining Association; Kone, Inc.

*Plaintiffs - Appellees*

v.

International Union of Elevator Constructors; Local Union No. 33

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: January 17, 2019
Filed: April 18, 2019

_____

Before SMITH, Chief Judge, COLLOTON and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

The International Union of Elevator Constructors ("IUEC") appeals the order of the district court vacating an arbitration award originally in favor of the IUEC. Because the arbitration award drew its essence from the contract, we reverse.

## I.    Background

The IUEC is a union of workers who install, repair and maintain elevators, escalators and related equipment throughout the United States and Canada.  The IUEC and the National Elevator Bargaining Association ("NEBA") are parties to a nationwide multi-employer collective bargaining agreement ("CBA"); Kone, Inc. a major elevator company that belongs to the NEBA, is a party to the CBA.  The CBA governs many aspects of the employer-employee relationship, including hiring and the payment of travel expenses.

The CBA provides for an arrangement known as a "hiring hall" which enables employment on an intermittent, job-by-job basis on projects that are frequently separated in location and time.  Under the CBA, Kone must use the hiring hall procedure for both experienced and inexperienced ("Apprentice") job applicants. The Apprentice list consists of applicants evaluated and ranked in accordance with the selection procedures of the local Joint Apprentice Committee ("JAC"), which is made up of representatives of both labor and management.  Apprentices are ranked in numerical order, and upon request of an employer, the union must send–and the employer must accept–the next applicant on the list.  Local 33 covers a large area encompassing Western Illinois, Iowa, South Dakota and parts of Nebraska.  Given this geographic footprint it is not unusual that employee applicants are from time to time required to travel long distances from their homes to the assigned employer.

Alex Thompson, of Rapid City, South Dakota, was the highest-ranked Apprentice applicant on the JAC's list when Kone's supervisor in Des Moines called Local 33 and requested an Apprentice for a job.  Kone's supervisor originally questioned Thompson's distance from the jobsite but ultimately accepted him. During a telephone conversation on Friday, August 16, 2013, Thompson was told to present himself at Kone's Des Moines office at 7 a.m. the following Monday. Thompson made the 615-mile trip in 10 hours and spent Sunday night at a motel, in

order to present himself at the Kone office as instructed. At the office he was given a drug test and spent time watching orientation videos before beginning work as an Apprentice. Thompson submitted a claim for reimbursement including claims for $295.35 for overtime travel and $386.46 for mileage; Kone refused to pay the claims. Local 33 grieved the issue but Kone held fast in its refusal on the ground that Thompson was not an employee at the time of travel and not entitled to reimbursement of travel expenses. When the parties were unable to resolve the dispute it was submitted to arbitration.

Following a four-day hearing the arbitrator determined that Kone was required to pay the travel expenses. The arbitrator considered Art. XIII of the CBA, which reads in part: "When Elevator Constructors are sent outside the primary jurisdiction, but within the zoned area of the secondary, travel time and travel expense shall be paid in accordance with the Local Expense Agreement." He turned next to the question of whether Thompson, as an Apprentice, fell under the definition of "Elevator Constructor." To answer that question, he turned to Art. II, Par. 1 of the CBA ("Recognition Clause"), which provides:

> The Employer recognizes the Union as the exclusive Section 9(a) bargaining representative for all **Elevator Constructor Mechanics, Elevator Constructor Helpers, Elevator Constructor Apprentices and Elevator Constructor Assistant Mechanics (hereinafter referred to sometimes as "Mechanics, Helpers, Apprentices and Assistant Mechanics" or collectively as "Elevator Constructor(s)")** in the employ of the Employers engaged in the installation, repair, modernization, maintenance and servicing of all equipment referred to in Article IV, Par. 2 and Article IV (A).

(emphasis added). Based on the emphasized language, the arbitrator concluded that the term "Elevator Constructor," as used in Art. XIII, included an Apprentice who is dispatched to a new job location pursuant to the CBA's hiring hall procedure. According to the arbitrator:

[U]nder Article XIII it does not matter for what purpose the Company directed Mr. Thompson to undertake that 615 mile trip travel, *i.e.*, it is enough that Kone managers ordered, directed or "sent" this Elevator Constructor to travel outside of his primary jurisdiction but within the zoned area of his secondary. Article XIII posits no difference whatsoever between being ordered to undertake such travel time and expenses to report to a job site or to report to Company offices for pre-employment drug testing, personnel processing, orientation or job briefing.

Kone appealed, and the district court vacated the award, determining that the arbitrator had failed to consider the "in the employ of Employers" key contractual language. The district court concluded that the arbitrator in quoting Art. II, Par. 1 of the CBA for the definition of Elevator Constructor had failed to consider the "the employ of the Employers" limitation. The district court found the omission highly relevant, stating:

The arbitrator entirely omitted the qualification that "Elevator Constructors" be "in the employ of the Employers." The arbitrator did not indicate his omission with ellipses, did not discuss the phrase during any part of his analysis, and did not explain why he omitted it. "In the employ of the Employers" is a limitation in Article II, Paragraph 1 the parties bargained for. In order for an award to draw its essence from the parties' agreements, the arbitrator must consider the entirety of the parties' agreements–including the phrase "in the employ of the Employers."

The union appeals seeking the reinstatement of the arbitrator's award.

## II.    Discussion

This court reviews the district court's order vacating an arbitral award *de novo*. PSC Custom, LP v. United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied

Indus. & Serv. Workers Int'l Union, Local No. 11-770, 763 F.3d 1005, 1008 (8th Cir. 2014) (quoting Alcan Packaging Co. v. Graphic Commc'n Conference, Int'l Bhd. of Teamsters & Local Union No. 77–P, 729 F.3d 839, 841 (8th Cir. 2013)).  Review of an arbitrator's award is highly deferential; it may be set aside only where the arbitrator's decision does not "draw[] its essence from the collective bargaining agreement."  United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36 (1987) (quoting United Steelworkers v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960)).  "We will not 'reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract.'"  Bureau of Engraving, Inc. v. Graphic Commc'n Int'l Union, Local 1B, 284 F.3d 821, 824 (8th Cir. 2002) (quoting Misco, 484 U.S. at 36).  "Indeed, we must confirm the award even if we are convinced that the arbitrator committed serious error, so 'long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority.'"  Boise Cascade Corp. v. Paper Allied-Indus., Chem. & Energy Workers (PACE), Local 7-0159, 309 F.3d 1075, 1080 (8th Cir. 2002) (quoting Bureau of Engraving, 284 F.3d at 824).

Applying Boise Cascade and George A. Hormel & Co. v. United Food & Commercial Workers, 879 F.2d 347 (8th Cir. 1989), the district court held that the arbitrator ignored clear and unambiguous language by excluding the modifying phrase "in the employ of the Employer," which the district court found to be a material omission of critical contract terminology.  We disagree.

Boise Cascade involved a dispute over the company's Last Chance Agreement, which placed special conditions on employees who had previously violated company rules.  The dispute centered around whether an employee could be fired only for violating the company's published rules, or whether violations of unwritten rules were also grounds for termination.  The contract stated: "[Y]ou must understand that it is your responsibility and obligation to follow **all published policies and procedures**.  Further violation of **any mill rules** and/or failure to comply with the

-5-

Terms and Conditions of this Letter could result in your immediate termination . . . ." Id. at 1078 (emphases added). The arbitrator in Boise Cascade found that the phrase "any mill rules" in the second sentence referred only to published rules. While we concluded that this may have been a plausible interpretation, we held that the arbitrator's interpretation did not draw its essence from the agreement because he failed to "discuss the language concerning 'any mill rules,' did not recognize its ambiguity, and consequently did not consider other evidence of the parties' intent." Id. at 1084. "Had he done so, yet still reached the same result, his decision would have rested on a legitimate interpretation of the parties' agreement." Id.

The type of ambiguity that rendered the Boise Cascade award subject to vacation is not present here. The plain language of Art. II, Par. 1 reveals that it is not primarily a definitional provision as the District Court viewed it, but rather a Recognition Clause. Simply stated it is a standard term in the CBA that defines the group represented by the Union for bargaining purposes. Under federal law the group may only be made up of employees, because the union may not represent people who are not employees within the bargaining unit. 29 U.S.C. § 159 (1959). In specifying that the union is the bargaining representative only for Elevator Constructors "in the employ of the Employer," the CBA represents the unambiguous intent of the parties to define the bargaining unit and to exclude those employed by other entities–for example, any contractors employed by the entity that hires Kone to effectuate the elevator repairs.

This is not to say that *only* Elevator Constructors who are employees can receive benefits from the agreement; CBAs often provide benefits for individuals who are not currently in the bargaining unit, such as retired employees. See, e.g., Maytag Corp. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers, 687 F.3d 1076 (8th Cir. 2012). Or, as in this case, CBAs provide procedures for qualifying and hiring future employees. See, e.g., Int'l Bhd. of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp., 380 F.3d 1084 (8th Cir. 2004). Even though Alex Thompson

was not a member of the bargaining unit when he was instructed by Kone to travel from Rapid City to Des Moines, he is entitled to travel pay. That determination is governed by Art. XIII, which covers all Elevator Constructors, not just those that are current Kone employees.

Hormel dealt with a dispute with regard to whether the CBA required that all hog slaughtering in a plant leased by the employer to another company be performed by bargaining unit members. 879 F.2d at 348-49. The arbitrator in Hormel failed to discuss a section of the CBA that precisely addressed leasing rights, and instead relied *solely* on the CBA's Recognition Clause in making its determination. Id. at 351. The Recognition Clause in Hormel, on its own, seemed to indicate that the employer retained exclusive rights to subcontract, and therefore was not required to hire bargaining unit members at leased plants. Id. at 349-350. However, we concluded that the language in the section unaddressed by the arbitrator–when read together with the Recognition Clause–created an ambiguity with regard to whether or not the employer, in fact, had an absolute right to subcontract work done in leased facilities. Id. at 351. We therefore vacated the arbitration award in Hormel because the arbitrator "fail[ed] to discuss a probative contract term and at the same time offer[ed] no clear basis for how he construed the contract to reach his decision without such consideration." Id.

Here, the Recognition Clause was not intended to limit conferred benefits solely to the bargaining unit. The arbitrator appropriately considered the relevant language of the Recognition Clause, even though it did not quote the Recognition Clause in its entirety. Comparing the relevant section of the Recognition Clause with Art. XIII creates no inconsistency or ambiguity with regard to who should receive compensation for travel expenses.

Kone presented several other arguments below that the district court found unnecessary to consider. On appeal, Kone repeats these claims as alternative grounds

for affirmance. Each of these alternative grounds are unavailing as all require us to reconsider the merits of the arbitration award, which we are not authorized to do. See supra Bureau of Engraving, 284 F.3d at 824. Each of the alternative grounds involves claims that the arbitrator issued an award that failed to draw its essence from the contract and rests on the arbitrator's own notions of industrial justice. A close review of the claims reveals the falsity of this argument. Each of the provisions as construed by the arbitrator were interpreted in the light of the CBA and were firmly rooted in the essence of the contract.

## III.    Conclusion

For the foregoing reasons, we reverse the ruling by the district court and remand for further proceedings consistent with this opinion.

_____